IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| **GOLDEN COUNTY FOODS, INC.,** | § | **CASE NO. 15-11062 (KG)** |
| *et al.*,[1] | § | |
| | § | **JOINTLY ADMINISTERED** |
| **DEBTORS** | § | Obj. Deadline: June 1, 2015 at 4:00 p.m. |
| | § | Hearing Date: June 8, 2015 at 1:30 p.m. |

## DEBTORS' APPLICATION TO RETAIN AND EMPLOY PIPER JAFFRAY & CO. IN CONNECTION WITH PROPOSED SALE OF DEBTOR'S ASSETS

Golden County Foods, Inc. ("GCF"), GCF Holdings II, Inc., and GCF Franchisee, Inc. (the "Debtors"), as debtors and debtors-in-possession, file this application (the "Application") pursuant to sections 327(a) and 328(a) of the Bankruptcy Code[2] and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Rules"), to retain and employ Piper Jaffray & Co. ("Piper") to provide advisory services to the Debtors pursuant to the terms and conditions of the Agreement (as defined below) between the GCF and PJC in connection with the proposed sale of substantially all of GCF's assets (the "Purchased Assets"). In support of this Application, the Debtors submit the Declaration of Teri Stratton, Managing Director of Piper (the "Stratton Declaration"), attached hereto as **Exhibit A**, and state as follows:

### I. BACKGROUND

1.    On May 15, 2015 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and are operating their businesses as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. A detailed description of the Debtors' business, capital

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Golden County Foods, Inc. (3018); GCF Holdings II, Inc. (3151); and GCF Franchisee, Inc. (4385).  The address of the Debtors' corporate headquarters is 300 Moore Road, Plover, Wisconsin 54467.

[2] 11 U.S.C. §§ 101, *et seq*.  Unless otherwise noted, all statutory references are to the Bankruptcy Code.

structure, and the events leading to the Debtors' bankruptcy is set forth in the Declaration of James J. Bradford (the "First Day Declaration") [Docket No. 10] filed in this case and is incorporated herein by reference.

## II. FACTUAL BACKGROUND

2.      In February 2015, the GCF engaged Piper to evaluate the GCF's strategic alternatives and provide investment banking and advisory services in connection with a potential sale or refinancing of the GCF's operations.  The terms of Piper's engagement are set forth in a letter agreement (the "Agreement") attached hereto as **Exhibit B**.

3.      Prior to the Petition Date, Piper contacted 128 parties to discuss the possibility of refinancing or purchasing the GCF's, 27 of which were potential sources of financing and 101 of which were potential purchasers.  Sixty-three of those contacted executed a non-disclosure agreement and received a memorandum describing GCF's business and the prospective opportunity.  51 of the 63 were potential purchasers while the remaining 12 were potential sources of financing.  Of those parties, 6 returned initial indications of interest expressing interest in purchasing GCF's assets.  No parties expressed interest in a refinancing.

4.      Of the 6 initial indications of interest, the highest offer was submitted by Monogram Foods, a Memphis-based food manufacturer and co-packager who seeks to acquire the Purchased Assets.  The Debtors and Monogram have reached an agreement for the sale of the Purchased Assets under the terms of an Asset Purchase Agreement (the "APA").  The APA provides for the sale of substantially all of the Debtor's assets to Monogram Appetizers, LLC ("Monogram") for a purchase price of $22 million paid at closing plus certain assumed liabilities.  The Debtors initiated this bankruptcy case to facilitate the sale of the Purchased Assets via an orderly and competitive sale process with Monogram serving as the "stalking

horse" bidder under the terms of the APA.  To that end, the Debtors filed a motion seeking approval of certain bidding procedures shortly after the Petition Date.  The Debtors contemplate that the sale will be completed no later than July 14, 2015 (i.e., 60 days after the Petition Date).

6.    Piper's advisory services will be integral to the Debtors' efforts to sell its assets via a competitive bidding process.  Among other things, Piper will testify regarding its extensive pre- and postpetition marketing of the Debtors' assets, assist the Debtors in postpetition marketing efforts, assist the Debtors in establishing and implementing bidding procedures, assist the Debtors in soliciting and evaluating bids from potential purchasers, assist the Debtors in running an auction process, and provide services that facilitate the approval consummation of the proposed sale.

### III.  RELIEF REQUESTED

6.    By this Application, the Debtors seek authority, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to retain and employ Piper to provide services to the Debtors in accordance with the terms of the Agreement.  The Debtors believe, in the exercise of their business judgment, that the retention and employment of Piper on the terms set forth in the Agreement will ensure that the Debtors are able to maximize the value of its assets for the benefit of creditors.  Accordingly, the retention of Piper as requested in this Motion is in the best interest of the Debtors' estates and should be approved.

### IV.  PIPER'S QUALIFICATIONS

7.    The Stratton Declaration sets forth Piper's qualifications to represent the Debtors in connection with the proposed sale.  As described in the Stratton Declaration, Piper is a leading middle-market investment banking and financial services company.  Founded in 1895, Piper has advised hundreds of clients in connection with sales and refinancing across a number of sectors, including the healthcare, consumer & retail, industrial, technology, and business services

industries.  In addition, Piper has significant experience advising companies in the context of

bankruptcy and restructurings.  Piper's proposed engagement will be directed by Ms. Stratton, a

Managing Director in Piper's Financial Restructuring group, and Matt Roghair, a Managing

Director in Piper's Consumer Investment Banking group.

8.    Based on the representations and statements in the Stratton Declaration, the

Debtor does not believe that Piper holds or represents any interest adverse to the Debtors or the

estates and is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

The Debtors believe that Piper is well-qualified to serve as the Debtors' investment banker and

advisor during the pendency of this bankruptcy proceeding.

## V. PIPER'S COMPENSATION

9.    Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Piper

on any reasonable terms and conditions, including both a flat fee and a percentage basis.  *In re*

*Uni-Marts, LLC*, 2010 WL 1347640, *2 (Bankr. D. Del. Mar. 31, 2010).  Under the Agreement,

Piper is compensated for its services by (a) a monthly fee of $35,000; (b) in the event of a sale of

the Debtors' assets, a sale fee equal to 3.0% of the sale price subject to a $1,000,000 minimum;

(c) in the event of a capital placement, a fee equal to 2.0% of senior secured debt, 4.0% of junior

debtor, and 6.0% of equity, subject to a $750,000 minimum; and (c) in the event of a

restructuring of the Debtors' business, a restructuring fee equal to $500,000.  The Debtors seek

authority to employ Piper in accordance with the terms of the Agreement.  The Debtors request

approval of the terms of the Agreement, including the compensation provisions therein, pursuant

to section 328(a) of the Bankruptcy Code.

10.    The Debtors believe that compensation provided for in the Agreement is

reasonable and that Piper's involvement in the Debtors' prepetition marking and existing

knowledge of the Debtors' assets and operations will inure to the Debtors' benefit in pursuing a sale and will assist the Debtors in fulfilling their duties in these chapter 11 cases.  Given the significant amount of time and resources Piper has already devoted to the marketing and sale of the Debtors' assets, the Debtors believe the fee structure is reasonable under the circumstances.

11.     As set forth in the Stratton Declaration, it is not the general practice of Piper or investment banking firms in general to keep detailed time records similar to those customarily kept by attorneys.  In light of the fact that Piper has devoted a significant amount of time to the Debtors prepetition, and given the short time in which the sale must be completed, the Debtors believes that requiring Piper's professionals to keep detailed time records for the services rendered under the Agreement would be unnecessary and unduly burdensome.  Thus, the Debtors request that the Court waive any requirement to keep detailed time records under the Rules or otherwise with respect to Piper for its services.

## VI. NOTICE

12.     The Debtors will provide notice of this Motion via overnight mail to: (i) the United States Trustee, (ii) the Debtor's 20 largest unsecured creditors, (iii) secured creditors, and (iv) those parties who have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VII. PRAYER

13.     Accordingly, the Debtors request that the Court enter an order, substantially in the form attached hereto as **Exhibit C**, (i) granting the relief requested herein; and (ii) granting any further relief the Court deems appropriate.

Dated:  May 20, 2015

By:     */s/ Dave Wiggins*
        Dave Wiggins
        Chief Executive Officer